**UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

**HEARING IN RE: EPIPEN (EPINEPHRINE INJECTION, USP)
EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION
MDL NO. 2802**

**TRANSCRIPT OF ORAL ARGUMENT
HEARD ON NOVEMBER 30, 2017
ST. LOUIS, MISSOURI**

Chairman:          Sarah S. Vance
                   United States District Court
                   Eastern District of Louisiana

Members:           R. David Proctor
                   United States District Court
                   Northern District of Alabama

                   Marjorie O. Rendell
                   United States Court of Appeals
                   Third Circuit

                   Charles R. Breyer
                   United States District Court
                   Northern District of California

                   Catherine D. Perry
                   United States District Court
                   Eastern District of Missouri

Court Reporter:    REAGAN A. FIORINO, RMR, CRR, CSR, CCR
                   United States District Court, EDMO
                   111 South 10th Street, Third Floor
                   St. Louis, MO 63102 | (314)244-7989

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

INDEX

ORAL ARGUMENT

Patrick T. Egan, Esq. . . . . . . . . . . . . . . . . . . 3

Lynn Lincoln Sarko, Esq.  . . . . . . . . . . . . . . . 6

Andrew S. Corkhill, Esq.  . . . . . . . . . . . . . . . 9

Adam K. Levin, Esq. . . . . . . . . . . . . . . . . . .12

Reporter's Certificate  . . . . . . . . . . . . . . . .15

* * *

PROCEEDINGS

(November 30, 2017)

**JUDGE VANCE:**  Next up is MDL No. 2802, *In Re: EpiPen, Employment Retirement Income Security Act Litigation.*

First up, Mr. Egan.

All right.  You all can meet and greet outside.  I would ask you to please clear out so we can take the next argument.

All right, Mr. Egan, let's hear it.

**MR. EGAN:**  Thank you.  Patrick Egan at Berman Tabacco on behalf of --

**JUDGE RENDELL:**  I can't hear you.

**JUDGE VANCE:**  You have to speak up.

**MR. EGAN:**  Patrick Egan on behalf of Berman Tabacco on behalf of the Klein plaintiffs and Minnesota plaintiffs seeking to have the ERISA EpiPen cases centralized in Minnesota.

A quick update.  A few weeks ago a new action was filed by my firm in Minnesota against Optum and UnitedHealth who are -- most of their entities are principally based in Minnesota.  So that action has been pending, so there is the one additional action.

**JUDGE VANCE:**  Why shouldn't we wait until the 1404(a) issue and the first to file issue have been resolved?

**MR. EGAN:**  So in this situation it appears that both

Judge Crabtree and Judge Magnuson are holding off, waiting on this panel's decision --

**JUDGE RENDELL:**  Can you speak up a little bit?

**JUDGE PROCTOR:**  Just a minute.

Hey, folks.  Please be quiet exiting the courtroom.

**MR. EGAN:**  The signals from both the district court pending motions are that they are waiting on this panel.  And as what this court has done in the past, if there is -- if it's not clear that the 1404 will be successful, it will move to centralize it.  In the sales marketing practices of antitrust EpiPen MDL, this very thing happened.  The Court said, well, the 1404 is pending.  Here, the 1404 transfer motions are not joined by all of the PBM defendants affected and it has been opposed by *Brannon*.  So for that reason we think it would be appropriate.  And particularly with Judge Crabtree --

**JUDGE VANCE:**  Well, why can't you coordinate two cases?  Even if there are three, they are basically two jurisdictions; right?

**MR. EGAN:**  There are two jurisdictions.  We have a situation of identical cases, essentially identical facts, identical parties.  Having them go in parallel just would not be efficient.  The witnesses are in Minnesota.

**JUDGE VANCE:**  But what is the matter with you and the lawyers in that other case where you all cannot agree to

*MDL NO. 2802*                                                                    5

coordinate two identical cases?  It seems to me that that is a rational way to proceed without having to create the infrastructure of an MDL.

MR. EGAN:  There have been discussions that have not been successful.  The argument has been made --

JUDGE BREYER:  But if we don't centralize it, the reality is you would coordinate?  You are willing to do so, aren't you?

MR. EGAN:  We believe these cases should be together.  It's just a question of where and when.

JUDGE BREYER:  My question to you -- is -- I understand that.  My question to you is:  If we don't centralize it, you still would try to coordinate these actions; right?

MR. EGAN:  Yes.  We would be open to that, but we would not be open to having parallel cases have to be coordinated separately from the two district courts.

JUDGE PERRY:  That was the question.  That was what he asked you and you said yes.

MR. EGAN:  We think it will be too difficult for --

JUDGE BREYER:  Two cases?  Too difficult?

MR. EGAN:  All of the defendants, all of the PBM defendants are in no way tied to Kansas.  There are four groups of PBM defendants, two of which have principal places of business in Minnesota.  We believe Minnesota is

appropriate.  We believe it is first filed --

**JUDGE VANCE:**  You don't think those two judges are going to coordinate two ERISA cases, two mature -- at least the judges are mature and have good judgment -- are going to coordinate those two ERISA cases.  It just seems to me this is unnecessary if you would recognize how easy it would be to coordinate with your colleagues in Kansas.

**MR. EGAN:**  Understood. And certainly --

**JUDGE VANCE:**  Well, we will ask him that, too.  Don't worry.

**MR. EGAN:**  Thank you.  I appreciate that.  I look forward to the answer.

**JUDGE PROCTOR:**  Well, before you sit down, I want your commitment that if we don't centralize this case you will do your dead-level best to coordinate with your other counsel.  Do we have that?

**MR. EGAN:**  If you do not centralize and if the pending 1404 is (undiscernible), we will do our best to coordinate.

**JUDGE PROCTOR:**  That's what I wanted to hear.

**MR. EGAN:**  Thank you, Your Honor.

**JUDGE VANCE:**  All right.  Next up is Mr. Sarko.

**JUDGE BREYER:**  So you can start out, Mr. Sarko, with agreeing with preceding colleague that you will --

**MR. SARKO:**  We will and the plaintiffs in the

*Brannon* case in Kansas will coordinate with the client case. No issue. Right now there is a pending conditional transfer order that is not up for oral argument that this --

**JUDGE VANCE:** Yeah, but you want to take this ERISA and push it into the antitrust RICO case and add new parts, new claims, new remedies, new motion practice to the antitrust case; right?

**MR. SARKO:** Well, I guess I'm interpreting it differently. I have -- this court order, when we were here in July and you issued your Conditional Transfer Order, as you said, you put the cases together, including the rebate schemes and payment to pharmacy benefit managers.

**JUDGE VANCE:** But that was the factual allegations about the rebate scheme as to one part of the discovery in an antitrust RICO case which could involve totally different issues than an ERISA case.

**MR. SARKO:** Well, the only difference is whether or not these -- whether or not the pharmacy benefit managers are also fiduciaries. That ten percent is going to be unique. But the rest of it is the same. Just as in the Bank of New York foreign currency case that Judge Kaplan had -- he's not here today. But the ERISA cases and the non-ERISA and RICO cases were put together in the same case, had a different settlement master. The documents are the same. Right now in the MDL we are preparing discovery. The discovery --

**JUDGE RENDELL:** *Klein* had been filed before you were before us in the summer; correct?

**MR. SARKO:** *Klein* was filed before we were -- right.

**JUDGE RENDELL:** Why wasn't it raised then?

**MR. SARKO:** It wasn't raised then because at that time, remember, we were opposing an MDL. We were opposing centralization. And it also was not clear whether the PBM and rebate scheme cases matters were even going to be centralized. The Court's order put those things together.

**JUDGE VANCE:** Why couldn't that single issue be coordinated? It's just one little piece of discovery --

**MR. SARKO:** We are happy to coordinate. I will say that no matter what happens that we will, anyone in the *Brannon* and *Klein* case will have to coordinate with the MDL cases because the documents are the same. A lot of the depositions are going to be the same. All the financial records are the same.

We are right now -- the only issue is whether they are going to get -- there would be third parties in the MDL and that discovery or whether in this case Mylan is going to be a third party and, in fact, in *Brannon*, Mylan, there is a pending motion to amend in Kansas to add them as an -- under an ERISA claim.

**JUDGE VANCE:** There has been some suggestion that you are trying to take over the ERISA cases by filing a

copycat case in Kansas.  What do you say to that?

**MR. SARKO:**  Two issues.  As far as copycat, in April, the other cases that actually raised these issues that you transferred to Kansas, raised all the issues of a rebate.  The ERISA case is a subclass of a very class of purchasers in the MDL class.  That is --

**JUDGE VANCE:**  That case doesn't have issues of standing of antitrust market definition of, you know, RICO issues.  It's got issues of whether or not these people were fiduciaries and how they negotiated the contracts and the piece on rebates.

**MR. SARKO:**  And actually in the pending ERISA case that is in Kansas, Mylan is being sued under a knowing -- as a knowing participant.  And if you've ever done ERISA cases, that is not a novel claim.  If you claim, as we do in the MDL, that the PBMs and Mylan and those individuals engaged in a rebate scheme and they are all wrongdoers, that is a garden variety claim.

**JUDGE VANCE:**  Thank you.  We have your argument.

**MR. SARKO:**  Thank you.

**JUDGE VANCE:**  Next up is Andrew Corkhill.

**MR. CORKHILL:**  Good morning, Your Honors. May it please the Court.  Andrew Corkhill of Quinn Emanuel.  Technically I'm counsel for Express Scripts, but in the interest of doing this as efficiently as possible, I'm

actually going to speak on behalf of all four PBM defendants in the *Brannon* and *Klein* actions.

I'll begin briefly by addressing the issue that's technically before the panel this morning, which is whether or not it should create a new MDL in Minnesota.  All four PBM defendants are in lockstep in opposing the creation of a new MDL for the reasons I think, you know, Judge Vance, that you touched upon in your prior question.  We are only dealing with two cases here.  We really do view *Brannon* as just a copycat of *Klein*.

We see no reason why -- the issue of having the two cases out there can't be resolved either through the pending 1404 transfer order that is pending in *Brannon* or through the pending motion to enjoin *Brannon* that is sitting out there in *Klein*.  Even if *Brannon* was neither enjoined nor transferred, we think that informal cooperation should work more than adequately here to manage those two cases.

I would like to also address the other issue that was just raised by Mr. Sarko regarding bringing *Brannon* and *Klein* into the existing Mylan antitrust MDL if I may.

On this point I should be clear, Your Honors, that there is a plurality of views amongst the PBM defendants.  Express Scripts, whom I represent, and Prime oppose coordination in the Mylan MDL.  CVS takes the position that the cases should go in.  I believe Optum takes the position

that *Brannon* and *Klein* should go to Judge Crabtree in Kansas but remain outside all of the MDL.

But I will just address Express Scripts' and Prime's position as to why coordination would be inappropriate and, again, it really touches on the same points that, Judge Vance, you were making.

**JUDGE RENDELL:**  You mean centralization.

**MR. CORKHILL:**  Sorry.  Centralization.  Yes, Judge Rendell.

The concept that there is a common factual core here between the Mylan Antitrust MDL and the PBM ERISA actions is just not the case.  The reality is, as this Court's 1407 order in the Mylan Antitrust MDL plead, there are five separate types of anti-competitive conduct that Mylan is being accused of engaging in those cases.

One of those five relates to the payment of rebates, not just the PBMs but also to insurers and the state Medicaid agencies.  So the reality is that one-third of one-fifth of the Mylan Antitrust MDL has something to do with the payment of rebates.  And to the extent it does, it's going to focus on the upstream relationship between Mylan and the PBMs, whereas the ERISA cases are going to focus on the downstream relationship between the PBMs and their thousands of plan clients and then ultimately the relationship between the plan clients and their individual members.

So for those reasons, Your Honor, we would suggest that unique factual issues clearly predominate here and argue against the bringing in of *Brannon* and *Klein*.

**JUDGE VANCE:**  All right.  Thank you.

Next up, Mr. Levin.

**MR. LEVIN:**  Good morning, Your Honors.  Adam Levin from Hogan Lovells on behalf of Mylan.

Your Honor, we agree with all the points just made by our colleagues from the PBMs about why additional MDL Minnesota should be rejected; so I'm not going to duplicate that.

I want to just make two points.  First of all, in response to Mr. Sarko's point that this panel actually over the summer already said the PBM issues should be in the EpiPen Kansas MDL, that's actually incorrect.  What the plaintiffs always leave off is the beginning of the sentence that they like to quote you in their briefs.  What the panel actually said is that those cases share common issues of fact about Mylan's anti-competitive conduct around a variety of issues, one of which was the PBMs.  By contrast, the PBM cases of course are not about Mylan centrally and are not about anti-competitive conduct at all.  They are about fiduciary duty breaches and PBM issues and all the rest.

Secondly, just an update for the panel's benefit, because I don't think this was reflected in the briefs, the

Kansas case is actually moving along at a pretty swift pace. And Judge Crabtree is doing an outstanding job managing the case in its current form.  The written discovery stay has been lifted.  We have spent dozens and dozens of hours negotiating active protective orders, document preservation orders, ESI protocols.  Motions to dismiss have been filed and are done. Initial disclosures have been served and are done.  The first document productions are about to be served and will be done.

So trying to shoehorn --

**JUDGE VANCE:**  Would you agree to coordinate the discovery on the rebates?

**MR. LEVIN:**  100 percent.  In fact, that is exactly what we have proposed in our briefs.  We are more than happy to do so.  We think that is in the best interest of efficiency.  That has been our plan all along, frankly.  It was our plan when we saw the client case filed before we were before the panel this summer.  We knew *Klein* was out there. No one had asked for it to be combined.  And our approach was going to be -- of course there will be some overlapping discovery.  It can easily be coordinated without trying to shoehorn the PBM cases into the existing MDL.

We don't want to undo all the good work this panel has done and all the good work Judge Crabtree has done so far managing the Kansas case.

**JUDGE VANCE:**  All right.  Thank you so much.  I

think there was some rebuttal.

        **MR. EGAN:**  I will waive rebuttal, Your Honor.

        **JUDGE VANCE:**  All right.  Thank you very much.

                            *   *   *

CERTIFICATE

I, Reagan A. Fiorino, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 14 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 12th day of December, 2017.

/s/ Reagan A. Fiorino
Reagan A. Fiorino, CRR, RMR, CCR, CSR
Official Court Reporter